IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| BENNY R. JONES, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | 1:20CV516 |
| | ) | |
| | ) | |
| ANDREW M. SAUL, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Benny R. Jones, Jr. brought this action to obtain review of a final decision of the Commissioner of Social Security denying his claims for disability insurance benefits, a period of disability, and supplemental security income. The Court has before it the certified administrative record and cross-motions for judgment.

**I. PROCEDURAL HISTORY**

In 2017, Plaintiff filed an application for disability insurance benefits, a period of disability, and supplemental security income, alleging a disability onset date of February 9, 2017. (Tr. 15, 210-221.) The applications were denied initially and upon reconsideration. (Tr. 15, 98-102, 107-124.) After a hearing, the Administrative Law Judge ("ALJ") determined on May 21, 2019 that Plaintiff was not disabled under the Act from February 9, 2017 through the date of

the May 21, 2019 decision. (Tr. 15-63.) The Appeals Council denied a request for review making the ALJ's decision the final decision for purposes of review. (Tr. 1-6.)

## II. STANDARD FOR REVIEW

The scope of judicial review of the Commissioner's final decision is specific and narrow. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986). Review is limited to determining if there is substantial evidence in the record to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In reviewing for substantial evidence, the Court does not re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). The issue before the Court is not whether Plaintiff is disabled but whether the finding that he is not disabled is supported by substantial evidence and based upon a correct application of the relevant law. *Id.*

## III. THE ALJ'S DECISION

The ALJ followed the well-established sequential analysis to ascertain whether the claimant is disabled, which is set forth in 20 C.F.R. §§ 404.1520, 416.920.[1] *See Albright v. Comm'r*

---

[1] "The Commissioner uses a five-step process to evaluate disability claims." *Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012) (citing 20 C.F.R. § 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to his [or her] past relevant work; and (5) if not, could perform any other work in the national economy." *Id.* A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. *Id.* "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the Secretary to produce evidence that other jobs exist in the national economy that the claimant can perform considering his age, education, and work experience." *Hunter*, 993 F.2d at 35 (internal citations omitted).

*of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The ALJ determined at step one that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of February 9, 2017. (Tr. 17.) The ALJ next found the following severe impairments at step two: rheumatoid arthritis, thoracic spine scoliosis with mild degenerative changes, restrictive lung disease with evidence of COPD, and morbid obesity. (*Id.*) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments listed in, or medically equal to, one listed in Appendix 1. (*Id.* at 18.)

The ALJ next set forth Plaintiff's Residual Functional Capacity ("RFC") and determined that he could perform light work, with the following additional limitations

> he must be able to sit down for 2-3 minutes after every hour of standing or walking. He would remain on task while in all positions, so long as the job description allows for work in all positions. He can frequently operate hand controls, handle, and finger with the bilateral hands. The claimant can frequently reach overhead bilaterally. He can occasionally climb ramps, stairs, ladders, ropes, and scaffolds; and can occasionally balance, stoop, kneel, crouch, and crawl.

(Tr. 19.) At the fourth step, the ALJ determined that Plaintiff was able to perform his past relevant work as a security guard. (Tr. 21.) At step five, the ALJ also determined that that were other jobs in the national economy that Plaintiff could perform. (Tr. 22-23.)

### IV. ISSUES AND ANALYSIS

Plaintiff raises two issues. Plaintiff contends that "[t]he ALJ did not build a logical bridge between the evidence and her conclusion that [he] retained the ability to stand one hour and sit 2-3 minutes every hour." (Docket Entry 13 at 10.) Plaintiff additionally contends that "[t]he

3

ALJ did not properly evaluate Dr. Schorn's opinion that [he] could not stand or walk for any length of time." (*Id.* at 7.) As explained below, neither of these arguments is persuasive.

### a. The ALJ built a logical bridge between the evidence and her conclusion that Plaintiff retained the ability to stand/walk one hour and sit 2-3 minutes every hour.

As noted, Plaintiff contends that "[t]he ALJ did not build a logical bridge between the evidence and her conclusion that [he] retained the ability to stand one hour and sit 2-3 minutes every hour." (Docket Entry 13 at 10.) As explained below, the Court concludes that the ALJ's RFC determination that Plaintiff can stand/walk for one hour and sit two to three minutes every hour is legally correct, well-supported, and susceptible to judicial review.

RFC measures the most a claimant can do despite any physical and mental limitations. *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006); 20 C.F.R. §§ 404.1545(a), 416.945(a). An ALJ must determine a claimant's exertional and non-exertional capacity only after considering all of a claimant's impairments, as well as any related symptoms, including pain. *See Hines*, 453 F.3d at 562-63; 20 C.F.R. §§ 404.1545(b), 416.945(b). The ALJ must then match the claimant's exertional abilities to an appropriate level of work (*i.e.*, sedentary, light, medium, heavy, or very heavy). *See* 20 C.F.R. §§ 404.1567, 416.967. Any non-exertional limitations may further restrict a claimant's ability to perform jobs within an exertional level. *See* 20 C.F.R. §§ 404.1569a(c), 416.969a(c). As for a function-by-function analysis, "[t]he RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis . . . . Only after that may RFC be expressed in terms of the exertional levels of work . . . ." SSR 96-8p, 1996 WL 374184, at *1 (1996).

4

Moreover, as the Fourth Circuit Court of Appeals has explained, remand may be appropriate where "inadequacies in the ALJ's analysis frustrate meaningful review[.]" *See Monroe v. Colvin*, 826 F.3d 176, 188 (4th Cir. 2016) (citation omitted). For this Court to meaningfully review an ALJ's RFC assessment, the ALJ "must include a narrative discussion describing how the evidence supports each conclusion." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (citation omitted). The ALJ "must *both* identify evidence that supports his conclusion *and* build an accurate and logical bridge from [that] evidence to his conclusion." *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) (emphases and alteration in original) (internal quotation marks omitted). Otherwise, the court is "left to guess about how the ALJ arrived at his conclusions" and cannot meaningfully review them. *Mascio*, 780 F.3d at 637.

Here, the ALJ built a logical bridge between the evidence and her conclusion that Plaintiff retained the ability to stand/walk one hour and sit 2-3 minutes every hour. First, the ALJ recognized that Plaintiff's treatment records from his rheumatologist, Dr. Karen Schorn, reflected that his rheumatoid arthritis caused "significant nodular formations" (Tr. 19-20, 320, 323, 664.) Nevertheless, the ALJ stressed that these same records demonstrated that medication rendered Plaintiff's rheumatoid arthritis well-controlled (Tr. 320, 323, 364), and that Plaintiff reported in February 2017 that his joints were "doing well" (Tr. 20 333). The ALJ also pointed out that Plaintiff exhibited normal muscle strength and/or normal range of motion with no crepitus on examination, even when he continued to have deformities and nodules on his elbows, hands, and heels. (Tr. 20, 322, 325, 366, 407.)

The ALJ also noted that Plaintiff experienced symptom exacerbation when he did not

have his medication. (Tr. 20.) Specifically, the ALJ cited an October 2017 report that Plaintiff had increased hand swelling/synovitis in the absence of his medication, but it seemed to resolve by February 2018 when he exhibited intact strength and range of motion without synovitis or crepitus upon examination.[2] (Tr. 20, 417-21, 442.)

Turning to the remainder of the relevant period, the ALJ discussed that in March and August of 2018, examination reports showed that Plaintiff continued to experience nodules in his hands and elbows, as well as enlargement of several joints in his hands, but that he again exhibited intact strength. (Tr. 20, 483, 529.) The ALJ also cited evidence that despite a medication adjustment in August 2018 (Tr. 20, 529), contemporaneous examinations still revealed normal movement and no joint swelling (Tr. 20, 509, 535, 540). The ALJ also noted that Plaintiff appeared to have improved symptoms, without active synovitis, but noted further that he did demonstrate marked crepitation in the knees in October 2018 and January 2019. (Tr. 20, 546-49, 554-57.) Plaintiff additionally reported in January 2019 that he had "marked improvement in joint pain and morning stiffness." (Tr. 20, 554.)

The ALJ also considered the positive findings related to Plaintiff's respiratory issues. (Tr. 20.) She cited a February 2017 examination report from a Pinehurst Medical Clinic ("Pinehurst") provider indicating that Plaintiff exhibited reduced breath sounds at his left lung base. (Tr. 20, 335.) The ALJ additionally pointed to a July 2017 abdomen/pelvis CT scan

---

[2] The fact that Plaintiff maintained control of his symptoms when taking his medications and following proper treatment also supports the ALJ's RFC assessment. 20 C.F.R. §§ 404.1530, 416.930; *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) ("If a symptom can be reasonably controlled by medication or treatment, it is not disabling.").

6

showing a small left pleural effusion. (Tr. 20, 387-88.) Follow-up chest CT scans showed multiple lymphadenopathy with a subsolid pulmonary nodule in the right lower lobe (Tr. 20, 394-95), slightly diminished breath sounds with evidence of COPD (Tr. 20, 407-08), and pulmonary function testing showing only 50% of predicted FVC and FEV1 values, with insignificant improvement from albuterol (Tr. 20, 409, 410, 413). Nevertheless, the ALJ then compared the same to the clinical evidence showing no interstitial lung disease. Specifically, the ALJ pointed to an August 2017 CT chest scan and to stable repeat CT scans in November 2017 and February 2018. (Tr. 20, 415, 432, 446-49.) The ALJ further noted that Plaintiff complained of no significant respiratory symptoms, and a provider, Scott Johnson, M.D., reported Plaintiff was "completely asymptomatic" from a respiratory standpoint. (Tr. 20, 411, 432.)

The ALJ also observed that Plaintiff's back condition required little treatment during the relevant period. (Tr. 20.) As the ALJ noted (Tr. 20), a Pinehurst provider ordered a thoracic spine x-ray in July 2017 after Plaintiff complained of back pain (Tr. 20, 356-59), but it revealed only minimal thoracic scoliosis and mild degenerative changes. (Tr. 368.) Throughout her RFC determination, the ALJ also discussed Plaintiff's weight and his obesity, while making it clear that she had accounted for it in her RFC determination. (*See*, *e.g.*, Tr. 19-20, 45, 334, 357, 435.)

The ALJ also correctly observed that state agency medical consultant Stephen Levin, M.D., reviewed Plaintiff's file and opined that he could perform light exertional work. (Tr. 21, 84-86, 92-94.) The ALJ granted partial weight to this opinion, but recognized that Plaintiff had even greater functional limitations and, thus, explained that she added the sit-stand option and manipulative limitations to the RFC. (Tr. 21, 84-85, 92-93.)

7

Case 1:20-cv-00516-LCB-JLW   Document 16   Filed 05/24/21   Page 7 of 14

In light of all this, the ALJ adequately explained that she provided the limitation to light work with a sit/stand option, and postural and manipulative limitations, to account for Plaintiff's symptoms. (Tr. 20-21.) The ALJ further stressed that the objective evidence suggested Plaintiff had a greater functional capacity than he alleged. (Tr. 20-21.) All of this is substantial evidence in support of the ALJ's RFC determination and it provides a logical bridge between the evidence and the ALJ's RFC determination.

Plaintiff's arguments to the contrary are not persuasive. Plaintiff contends that his rheumatoid arthritis "made it impossible for [him] to walk through a grocery store without stopping to rest or using a motorized cart." (Docket Entry 13 at 11.) Plaintiff contends further that this evidence did "not support a finding either that [Plaintiff] can stand an hour at a time or that he requires only two to three minutes of rest before standing or walking another hour." (*Id.*) From this, Plaintiff concludes that "[t]he ALJ's failure to provide any evidentiary basis for this part of her RFC assessment requires remand." (*Id.*)[3]

It is true that Plaintiff testified at the administrative hearing that he had "to stop and rest" when he went grocery shopping (although he did not indicate how frequently) and that "sometimes" he "even ha[d] to use one of those ride carts" (although he did not indicate how often). (Tr. 50.) However, as explained in detail above, the ALJ pointed to a wide array of

---

[3] In the above-quoted language, Plaintiff appears to be referencing hearing testimony in which he stated that that he had "to stop and rest" when he went grocery shopping and that "sometimes" he "even ha[d] to use one of those ride carts." (Tr. 50.) However, as demonstrated above, the ALJ pointed to ample evidence in the record supporting the conclusion that Plaintiff was not as limited as he alleged. Beyond this, the ALJ accommodated Plaintiff's supported limitations with a reduced range of light work and a sit/stand option.

8

evidence—including generally normal muscle strength and range of motion—in support of his conclusion that Plaintiff had a greater functional capacity than he alleged. (Tr. 20-21.) Plaintiff's contention that the ALJ failed to provide "any evidentiary basis" for her RFC determination is simply not the case.[4]

In summary, the ALJ, as illustrated in the preceding section, sufficiently discussed her consideration of the evidence to give insight into her thought process and analysis. The ALJ "buil[t] an accurate and logical bridge from the evidence to [her] conclusion[s]" regarding the extent to which Plaintiff's impairments impacted his ability to engage in substantial gainful activity sufficient to permit meaningful judicial review. *Monroe*, 826 F.3d at 189. In light of all this, the ALJ's RFC determination is legally correct, supported by substantial evidence, and susceptible to judicial review.

### b. The ALJ's evaluation of Dr. Schorn's opinion is legally correct, supported by substantial evidence, and susceptible to judicial review.

Plaintiff further contends that "[t]he ALJ did not properly evaluate Dr. Schorn's opinion that [he] could not stand or walk for any length of time." (Docket Entry 13 at 7.) As explained below, this contention is unpersuasive.

The treating source rule requires an ALJ to give controlling weight to the opinion of a

---

[4] Whether an ALJ builds a logical bridge between the medical record and her conclusions about the same is, necessarily, a fact specific inquiry to be evaluated on a case-by-case basis. And, here, the cases that Plaintiff has cited (Docket Entry 13 at 11 n.60) in support of his argument that the ALJ failed to build such a logical bridge—none of which (for example) address a sit/stand option—are not particularly instructive. *See Coats v. Saul*, No. 1:17CV658, 2019 WL 5783511 (M.D.N.C. Aug. 19, 2019); *Carter v. Berryhill*, No. 2:17-CV-04399, 2018 WL 4169108 (S.D.W. Va. Aug. 30, 2018); *McLaughlin v. Colvin*, 200 F. Supp. 3d 591 (D. Md. 2016). And, in any event, as demonstrated in this Recommendation, the ALJ adequately supported and explained the RFC determination in this case.

treating source regarding the nature and severity of a claimant's impairment. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).[5] The rule also recognizes, however, that not all treating sources or treating source opinions merit the same deference. The nature and extent of each treatment relationship appreciably tempers the weight an ALJ affords an opinion. *See* 20 C.F.R. §§ 404.1527(c)(2)(ii), 416.927(c)(2)(ii). A treating source's opinion, like all medical opinions, deserves deference only if well-supported by medical signs and laboratory findings and consistent with the other substantial evidence in the case record. *See* 20 C.F.R. §§ 404.1527(c)(2)-(4), 416.927(c)(2)-(4); SSR 96-2p, 1996 WL 374188, at *1 (July 2, 1996). When a treating source's medical opinion is not given controlling weight, the ALJ should consider the following factors in deciding what weight to give a medical opinion: (1) the length of the treatment relationship, (2) the frequency of examination, (3) the nature and extent of the treatment relationship, (4) the supportability of the opinion, (5) the consistency of the opinion with the record, (6) whether the source is a specialist, and (7) any other factors that may support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(2)(i-vi), 416.927(c)(2)(i-vi). "[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590. The ultimate issue of whether a claimant is disabled is administrative and therefore reserved for the Commissioner. 20 C.F.R. §§ 404.1527(d), 416.927(d).

---

[5] These regulations apply for applications, like Plaintiff's, filed before March 27, 2017. *See* 20 C.F.R. §§ 404.1527, 416.927. For applications filed on or after March 27, 2017, a new regulatory framework for considering and articulating the value of medical opinions has been established. *See id.* §§ 404.1520c, 416.920c; *see also* 82 Fed. Reg. 5844-01, 2017 WL 168819 (revisions to medical evidence rules dated Jan. 18, 2017, and effective for claims filed after Mar. 27, 2017).

Here, in October of 2018, Dr. Karen Schorn, Plaintiff's treating rheumatologist, wrote that she had been

> taking care of [Plaintiff] for [a] number of years for severe destructive nodular rheumatoid arthritis. Unfortunately he has been poorly controlled because we [have] been limited in the medications that we can use [due to] a lack of insurance[.] [T]his has led to increased destruction of his joints including his hands[,] wrists[,] elbows[,] knees[,] feet[,] and ankles. Patient has always been compliant with his medications and his office visits. He has tried multiple times [to] hold down a job but because of his severe joint damage he has difficulty with standing walking [sic] for any length of time kneeling bending at use [sic] his hands and arms.
>
> Patient is completely disabled for any gainful employment and I do not expect that this will change in the near future[.] The only way to reverse the damage done by his rheumatoid arthritis is with joint replacement surgery which at this point he will not be able to have done due to his lack of insurance.

(Tr. 543.)

The ALJ evaluated Dr. Schorn's 2018 opinion, but ultimately afforded it "little weight," explaining that:

> Dr. Schorn issued an[ ] opinion in October 2018 that the claimant has difficulty with standing, walking, kneeling, bending, and use of his hand/arms, and thus is completely disabled and unable to work. (Ex. 11F/1) Though Dr. Schorn specifies activities that the claimant has difficulty with, her statement is vague in the use of the term "has difficulty with", without describing the claimant's specific abilities or limitations when doing those activities. The conclusion that he is "completely disabled and unable to work" is, again, not a valid medical opinion, but a legal determination reserved for the Commissioner of Social Security. 20 CFR 404.l520b(c)(3)(i), 416.920b(c)(3)(i). The objective evidence from treatment notes and imaging support some limitations, as outlined in the residual functional capacity, but not disabling limitations.

11

(Tr. 21.)[6]

Here, the ALJ provided good reasons for discounting Dr. Schorn's opinion. First, the ALJ appropriately found that Dr. Schorn's opinion that Plaintiff was permanently disabled was not entitled to controlling weight because the issue of disability is reserved to the Commissioner. (Tr. 21.) *See* 20 C.F.R. §§ 416.927(d), 404.1527(d). Second, the ALJ recognized Dr. Schorn's opinion that Plaintiff "had difficulty with" standing, walking, kneeling, bending, and using his hands and arms, but explained that she could not adopt the same because the term "difficulty with" was vague. (Tr. 21.) The ALJ continued that Dr. Schorn failed to describe Plaintiff's "specific abilities or limitations when doing those activities." (Tr. 21.)

Third, the ALJ pointed to the objective medical evidence from Plaintiff's treating providers, specifically treatment notes, including those from Dr. Schorn, and imaging studies that she discussed in support of her RFC finding. (Tr. 21.) As the ALJ explained, that evidence, upon which she relied to support the RFC finding, demonstrates that Plaintiff had some limitations, but they were not of disabling severity (Tr. 21). Indeed, as noted earlier, treatment notes throughout the relevant period reflected that medication rendered Plaintiff's rheumatoid arthritis well-controlled (Tr. 320, 323, 364, 417-21, 442-43), he exhibited normal muscle strength and normal range of motion with infrequent crepitus on examination, even when he

---

[6] Dr. Schorn's treatment notes also contain a number of additional conclusory declarations that Plaintiff is disabled, which the ALJ likewise discounted and which Plaintiff does not appear to contest. (Tr. 21, 479, 483, 525, 546-47, 553.) In any event, the ALJ did not err in discounting Dr. Schorn's conclusions that Plaintiff was disabled because, as explained herein, that is a legal decision to be made by the ALJ. *See* 20 C.F.R. §§ 416.927(d), 404.1527(d).

12

continued to have deformities and nodules on his elbows, hands, and heels (Tr. 322, 325, 366, 407, 483, 509, 529, 535, 540, 554). Thus, Dr. Schorn's opinion of disability was inconsistent with other evidence of record, including her own examination findings. *See* 20 C.F.R. §§ 416.927(c)(3)-(4), 404.1527(c)(3)-(4) (providing that supportability and consistency with the record as a whole are relevant factors in weighing medical source opinions).

Fourth, in contrast to Dr. Schorn's opinion, state agency medical consultant Dr. Levin, the non-examining state agency medical consultant mentioned earlier, reviewed Plaintiff's file and opined that he could perform light exertional work. (Tr. 84-86, 92-94.) The ALJ granted more weight, specifically partial weight, to this opinion, but recognized that Plaintiff had even greater functional limitations and, thus, explained that she added the sit-stand option and manipulative limitations to the RFC. (Tr. 21, 84-85, 92-93.) The ALJ's reliance, in part, on this opinion is permissible because as a state agency medical expert, Dr. Levin is an expert familiar with the requirements of the Social Security disability program and his opinion that Plaintiff was not disabled and could perform light exertional work was consistent with the record as a whole. (Tr. 21.) *See Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) ("[T]he testimony of a non-examining physician can be relied upon when it is consistent with the record[.]"). For all these reasons, the ALJ's decision to discount Dr. Schorn's medical opinion is legally correct, supported by substantial evidence, and susceptible to judicial review.

Plaintiff's argument to the contrary is not persuasive. Plaintiff contends that because Dr. Schorn opined that he had difficulty standing or walking "for any length of time," the ALJ was wrong to discount the opinion as vague and lacking in specific limitations. (Docket Entry

13

13 at 8.) However, in discounting Dr. Schorn's opinion, the ALJ also explained that "[t]he objective evidence from treatment notes and imaging" did not support Dr. Schorn's findings of "disabling limitations." (Tr. 21.) As demonstrated above, this is indeed the case. As explained, treatment notes throughout the relevant period reflected that medication rendered Plaintiff's rheumatoid arthritis well-controlled (Tr. 320, 323, 364, 417-21, 442-43), he exhibited normal muscle strength and normal range of motion with infrequent crepitus on examination, even when he continued to have deformities and nodules on his elbows, hands, and heels (Tr. 322, 325, 366, 407, 483, 509, 529, 535, 540, 554). For all of the reasons set forth above, Plaintiff's objection as to Dr. Schorn is without merit.

## V. CONCLUSION

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is legally correct and supported by substantial evidence. Accordingly, this Court **RECOMMENDS** that Plaintiff's Motion for Judgment (Docket Entry 12) be **DENIED**, Defendant's Motion for Judgment on the Pleadings (Docket Entry 14) be **GRANTED**, and the final decision of the Commissioner be upheld.

/s/ Joe L. Webster
Joe L. Webster
United States Magistrate Judge

May 24, 2021
Durham, North Carolina