IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

BENNY R. JONES, JR., )
)
    Plaintiff, )
)
v. )
) 1:20CV516
KILOLO KIJAKAZI, Acting )
Commissioner of Social Security[1], )
)
    Defendant. )

**ORDER**

On May 24, 2021, in accordance with 28 U.S.C. § 636(b), the Recommendation of the United States Magistrate Judge was filed and served on the parties in this action, and a copy was given to the court. (ECF No. 16). Within the time limitation set forth in the statute, counsel for Plaintiff objected to the Recommendation. (ECF No. 18.) None of these objections have merit and only one (*id.* at 1-7) requires a brief discussion.

More specifically, citing *Dowling v. Comm'r of SSA*, 986 F.3d 377 (4th Cir. 2021), Plaintiff faults the ALJ for not considering the factors set forth in 20 C.F.R. § 404.1527(c) in evaluating Dr. Schorn's opinion. (ECF No. 18 at 2.) *See* 20 C.F.R. § 404.1527(c) (listing relevant factors as whether the relationship is an examining relationship and/or a treating relationship as well as: (1) the length of the treatment relationship, (2) the frequency of examination, (3) the nature

---

[1] President Joseph R. Biden, Jr. appointed Kilolo Kijakazi as the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Andrew M. Saul as the Defendant in this suit. Neither the court nor the parties need take any further action to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

and extent of the treatment relationship, (4) supportability, (5) the consistency, (6) whether the source is a specialist, and (7) any other factor that may support or contradict the opinion). Nevertheless, Plaintiff admits that the ALJ considered the factors of supportability and consistency. (Docket Entry 18 at 2-3, Tr. 20-21.) and, a review of the ALJ's decision demonstrates that the ALJ considered the remaining factors as well.

Specifically, the ALJ explicitly indicated that she considered the relevant factors when she stated, "The undersigned has also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 . . . ."[2] (Tr. 19.) Consequently, Plaintiff's contention that the ALJ failed to consider the regulatory factors is contradicted by the ALJ's explicit statement that she did, in fact, consider them.

The ALJ also explicitly considered Plaintiff's longitudinal relationship with Dr. Schorn, whom he described as one of Plaintiff's "treating providers at Pinehurst Medical Clinic." (Tr. 21.) Dr. Schorn examined Plaintiff a number of times over a number of years and the ALJ addressed most—if not all—of these examinations by exhibit.[3] To do this, the ALJ *necessarily*

---

[2] *See, e.g.*, *Carter v. Colvin*, No. 1:13CV334, 2016 WL 1735885, at *12 (M.D.N.C. May 2, 2016) (concluding ALJ's statement that he considered medical opinions in light of 20 C.F.R. § 404.1527 supported conclusion that the relevant regulatory factors had been considered).

[3] (*See* Tr. 20, 323, 325 (9/12/2016, ".... patient has had well controlled rheumatoid arthritis on this regimen," "well nourished, well developed, no acute distress," "no active synovitis, joint deformities, mulp nodules"); Tr. 20, 21, 320, 322 (01/16/2017, "patient . . . is doing very well on his current regimen for control of his rheumatoid arthritis," "no acute distress," "no active synovitis, join deformities, mulp nodules,"); Tr. 364, 366 (5/17/2017, "patient has had well controlled rheumatoid arthritis" and normal muscle strength); Tr. 21, 417, 421 (10/16/2017, "ran out of Enbrel," "[m]ild synovitis of hands and wrists off Enbrel," "well nourished, well developed, no acute distress," "muscle strength 5/5 throughout"); Tr. 20, 21, 479, 482-83 (03/19/2018 (enlargement of several joints in hands and nodules in hands and elbows but "muscle strength 5/5 throughout," "well nourished, well developed, no acute distress"); Tr. 20, 21, 525, 529, 08/22/2018 (same); Tr. 20, 21, 546, 549 (10/23/2018, "no morning stiffness and good control of his rheumatoid arthritis," "well nourished, well developed, no acute distress," "[n]o active synovitis[,] multiple rheumatoid nodules[,] destruction of hands[,] wrist[,] elbows and feet[,] marked crepitation range of motion of both knees"); Tr. 20, 21, 553, 556 (01/23/2019,

must have considered the examining relationship and the nature, length and frequency of that relationship.

Dr. Schorn's treatment notes, as well as her medical opinions—which the ALJ cited and discussed—are also replete with references to her specialization in rheumatology. (Tr. 20-21, 320, 322, 325, 333, 365, 543.) In fact, the record clearly demonstrates that the ALJ was aware that Dr. Schorn specialized in rheumatology, because at the administrative hearing, Plaintiff's attorney explained that "Pinehurst Medical Clinic . . . is the rheumatologist," (Tr. 33), to which the ALJ responded, "Which is the rheumatology, right." (Tr. 33.) It is very difficult to believe that the ALJ could have written the decision she did without taking into consideration Dr. Schorn's specialization in rheumatology, and even assuming for the sake of argument that the ALJ failed to consider this factor (which does not appear to be the case) the error was harmless. Ultimately, the problems with Dr. Schorn's vague, conclusory, and unsupported opinions—which were addressed by the ALJ and the Magistrate Judge (Tr. 20-21, Docket Entry 16 at 9-14)—were irrelevant to her specialization.

As for the "other factor" catch-all category, Plaintiff fails to assert precisely what "other factor" the ALJ purportedly failed to consider (if any) in weighing Dr. Schorn's opinions. In any event, the ALJ accurately noted that the non-examining state agency physician considered the existing record (and in doing so referenced some of Dr. Schorn's treatment notes) and found Plaintiff to be limited to light—rather than sedentary—work. (Tr. 21, 83-86, 92-94.) Thus, the ALJ demonstrated that the opinion of the non-examining state agency physician

---

("marked improvement in his synovitis and joint symptoms he still has significant destruction and significant nodules," "normal balance, muscle strength 5/5 throughout").)

contradicted Dr. Schorn's opinion as to Plaintiff's limitations. The non-examining state agency physician, who the ALJ found partially persuasive, noted in his analysis that Plaintiff regularly exhibited, for example, a normal and steady gait and the medical record repeatedly bears this out. (Tr. 83, 85, 91, 93, 358, 361, 380, 407, 442, 477, 504, 509, 512, 515, 540, 566.) In fact, the ALJ pointed to many of these records in support of her decision.[4] (Tr. 17, 20-21, 358, 407, 442, 504, 509.) All things considered, the ALJ gave good reasons for rejecting Dr. Schorn's opinions, including her conclusion that Plaintiff could not stand or walk.[5]

In light of all this, the instant case is distinct from *Dowling*. In *Dowling*—unlike this case—the ALJ ignored most of the relevant factors and "simply declared that he possessed 'the discretion to give less [than controlling] weight' to the opinion of the treating physician" that was neither vague nor conclusory. 986 F.3d at 385. This is not a case where the ALJ

---

[4] Plaintiff objects to the "conclusion that Dr. Schorn's opinion was inconsistent with other medical evidence or that the contradictory opinions from non-examining state agency consultants provides an adequate basis for discounting the treating physician's opinion." (Docket Entry 18 at 2.) However, as demonstrated above, in the Magistrate Judge's recommendation, and the ALJ's decision, substantial evidence supported the conclusion that Plaintiff could, among other tasks, stand and walk. Plaintiff also points to one of Dr. Schorn's office notes in which she reports that Plaintiff had "joint pain with overuse due to previous damage." (Docket Entry 18 at 4 referencing Tr. 320.) However, this note—which also described Plaintiff as "doing very well" and without morning stiffness or "hot red swollen joints" or synovitis or decreased muscle strength or loss of balance or joint deformities— (Tr. 320, 322) does not compel the conclusion that Plaintiff was unable to stand or walk. A claimant is not disabled simply because he experiences some pain, and the treatment note does not detail what activities Plaintiff was participating in during January of 2017 that resulted in "overuse." Purely by way of example, if Plaintiff were still walking over ten miles a day like he reported he was in August of 2016 (Tr. 338), some joint pain from overuse might be expected. Similarly, while theoretically instructive, Plaintiff's citations to *general* descriptions of the potential impact of rheumatoid arthritis (Docket Entry 18 at 3-4) do not compel a different conclusion on the *specific* facts of this case as set forth by the ALJ and supported by substantial evidence. Plaintiff also points to instances in the record where his rheumatoid arthritis is described as "destructive" or causing "destruction." (Docket Entry 18 at 3-6.) However, as alluded to earlier, such descriptors are vague and do not set forth a precise limitation that could be adopted into the RFC.

[5] In fact, Dr. Schorn opined that Plaintiff could not walk for "any length of time." (Tr. 21, 543.) Yet, at his administrative hearing, Plaintiff himself admitted that he could walk, so long as he did not walk "for a long time." (Tr. 19, 50.)

ignored Plaintiff's rheumatoid arthritis, but a case in which the ALJ took it into consideration and accommodated the attendant limitations by restricting Plaintiff to a reduced range of light work with additional postural and manipulative limitations. (Tr. 19.)

For all these reasons, the court is satisfied that the ALJ considered the relevant factors and that any error was harmless. In the end, the question is not whether the ALJ could have articulated her decision with greater clarity, but whether her decision was legally correct and supported by substantial evidence. The court concludes that both criteria are met here.

The court has made a de novo determination which is in accord with the Magistrate Judge's report. The court therefore adopts the Magistrate Judge's Recommendation as supplemented herein.

IT IS THEREFORE ORDERED that the Plaintiff's Motion for Judgment, (ECF No. 12,) is DENIED, Defendant's Motion for Judgment on the Pleadings, (ECF No. 14), is GRANTED, and the final decision of the Commissioner is AFFIRMED, and this action is DISMISSED with prejudice.

A Judgment dismissing this action will be entered contemporaneously with this Order. This, the 22nd day of July 2021.

/s/ Loretta C. Biggs
United States District Judge